# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | |
|---|---|
| **VENESSA CAINION, natural mother of DEMARQUIS A. CAINION, and WINNIE HANFORD as the administrator of the estate of DeMarquis A. Cainion,**<br><br>Plaintiffs,<br><br>v.<br><br>**VALDOSTA STATE PRISON, _et al._,**<br><br>Defendants. | Civil Action No. 7:15-CV-174 (HL) |

## ORDER

DeMarquis Cainion died after a stabbing incident involving a fellow inmate during his incarceration at Valdosta State Prison ("VSP"). Plaintiffs Venessa Cainion, as Cainion's mother and legal heir, and Winnie Hanford, the Administrator of Cainion's estate, filed this action against the Georgia Department of Corrections ("GDOC"), VSP, twelve current and former employees of GDOC and VSP, and two inmates alleging that pursuant to 42 U.S.C. § 1983 these Defendants are liable to Cainion's estate for purported violations of Cainion's Eighth Amendment right to be free from cruel and unusual punishment.

The institutional Defendants, the GDOC and VSP, along with Defendants Owens, Jacobs, Danforth, Allen, Orr, and McDougle have moved to dismiss

Plaintiffs' Complaint (Docs. 8, 11, 15, 16). For the following reasons, Defendants' motions are **GRANTED.**

## I. BACKGROUND[1]

DeMarquis Cainion was serving a sentence for burglary while incarcerated at VSP from July 2011 until his death on September 16, 2013. (Doc. 1, ¶ 7). Cainion suffered from an unidentified medical condition that caused him to have uncontrollable and unpredictable seizures. He also suffered from asthma. (Doc. 1, ¶ 8).

In May 2012, Cainion was assigned a top bunk by Deputy Warden Orr. (Doc. 1, ¶ 10). Cainion made several formal and informal requests for a bottom bunk because of the risk that he may have a seizure during his sleep and fall from the top bunk. Cainion then requested medical guidance to supersede Orr's order. (Doc. 1, ¶ 11). On May 23, 2012, Nurse Knowles confirmed to Orr that Cainion should be assigned a bottom bunk due to his medical condition. (Doc. 1, ¶ 10). Despite receiving this confirmation, Cainion's top bunk assignment remained unchanged. (Doc. 1, ¶¶ 10-12).

On June 12, 2012, Cainion had a seizure while sleeping and fell from the top bunk. (Doc. 1, ¶ 13). As a result of the fall, Cainion suffered injuries to his

_____

[1] The facts are taken from the complaint and are accepted as true for purposes of the motion.

2

face and head, which prompted him to file a *pro se* lawsuit against VSP personnel for deliberate indifference.[2] (Doc. 1, ¶ 14).

Sometime after the June 12th injury, Cainion was transferred to a one person cell in the Annex Unit of VSP where he remained until August. On August 23, 2012, Sargent Schnake informed Cainion that he would be transferred to a two-man cell. (Doc. 1, ¶ 16). Cainion requested that he remain in his current one-person cell and cited his medical condition as a basis for doing so. Id. Subsequently, Cainion and Schnake began to argue and an altercation ensued. Id. During the altercation, Cainion was sprayed with riot spray, causing him to have an asthma attack. Id. Cainion was taken to a hospital outside of the prison to stabilize his breathing but later returned to VSP. (Doc. 1, ¶¶ 17-18). When he returned to VSP, Cainion was transferred from the Annex Unit of VSP to the main housing unit. (Doc. 1, ¶ 18). On the same day of his transfer, Cainion was robbed and stabbed. (Doc. 1, ¶ 19). Presumably as a result of this stabbing incident, Cainion was transferred to solitary confinement in September 2012 for his own protection. (Doc. 1, ¶ 21).

Cainion remained in solitary confinement for several months, despite multiple transfer requests. (Doc. 1, ¶ 22). It is not evident from the Complaint

---

[2] See Cainion v. Danforth, et al., No. 7:12-cv-108 (M.D. Ga.). This lawsuit was dismissed for failure to exhaust administrative remedies on August 13, 2012. (Doc. 1, ¶ 14).

when Cainion was released from solitary confinement. On September 16, 2013, Cainion was stabbed by a fellow inmate and pronounced dead on the same day at 12:46 p.m. (Doc. 1, ¶¶ 28-29).

All moving Defendants argue that Plaintiffs' federal claims under § 1983 for deliberate indifference to serious medical need, conditions of confinement, failure to protect, and excessive force are either barred by the statute of limitations or are otherwise deficient. Defendants further argue that Plaintiffs' state-law claims for wrongful death, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, and personal injury are also barred by the statute of limitations. Finally, Defendants argue that Plaintiffs' state-law claims are alternatively barred on other grounds: sovereign immunity, Plaintiffs' failure to adhere to ante litem notice requirements, and failure to effectuate proper service.

## II. DISCUSSION

### A. Motion to Dismiss Standard

When reviewing a motion to dismiss, the court shall accept "all well-pleaded facts . . . as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271,1273 n. 1 (11th Cir. 1999). The court must dismiss the complaint if, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas

Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Executive 100, Inc. v. Martin County, 992 F.2d 1536, 1539 (11th Cir. 1991) and Bell v. Hood, 327 U.S. 678, 682 (1946)). Accordingly, to avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

**B. Section 1983 Claims**

Count III of Plaintiffs' Complaint generally asserts that Defendants are liable to Plaintiffs pursuant to 42 U.S.C. § 1983 for purported violations of Cainion's constitutional rights while incarcerated at VSP. Because of the manner in which Plaintiffs pled their § 1983 claims, it is difficult to discern what precise claims Plaintiffs intend to pursue. Based on the Court's reading of the Complaint, Plaintiffs appear to assert the following § 1983 claims:

(1)    delay/denial of treatment claim based on allegations that Defendants were deliberately indifferent to Cainion's unspecified seizure disorder, which resulted in Cainion's fall from a top bunk on June 12, 2012;

(2)    excessive force claim based on allegations that VSP officials assaulted Cainion on three occasions in August 2012 and again in January 2013, purportedly in retaliation for Cainion filing grievances;

5

(3)    delay/denial of medical treatment for alleged indifference to Cainion's asthma condition after Defendant Schnake deployed riot spray on August 23, 2012;

(4)    failure to protect claim based on a September 2012 attack by an unidentified fellow inmate;

(5)    conditions of confinement claim based on Cainion's placement in solitary confinement in September 2012;

(6)    failure to protect claim arising from the September 16, 2013 stabbing of Cainion by Jeffrey Steven Dell;

(7)    delay/denial of treatment claim based on Defendants' alleged indifference to the seriousness of Cainion's medical condition following the stabbing.

Section 1983 creates a civil cause of action for any person deprived of rights, privileges, or immunities secured by the Constitution and other laws by another person acting under color of law. See 42 U.S.C. § 1983; Rehberg v. Paulk, 566 U.S. 356, 361 (2012). This statute "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994); see also Whiting v. Traylor, 85 F.3d 581, 583 (11th Cir. 1996) ("Section 1983 is no source of substantive federal rights."). To prove a claim under 42 U.S.C. § 1983, a plaintiff must show: "(1) that the act or omission deprived plaintiff of a right,

privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law." Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (quoting Bannum, Inc. v. City of Ft. Lauderdale, 901 F.2d 989 (11th Cir. 1990)). "The first step in any such claim [under 42 U.S.C. § 1983] is to identify the specific constitutional right allegedly infringed." Albright, 510 U.S. at 271.

### 1. Claims Against VSP and GDOC

Plaintiffs' claims asserted against VSP and GDOC are barred by the Eleventh Amendment and are subject to dismissal. The Eleventh Amendment bars suits against state entities unless there has been a valid waiver by the state or congressional authority. See Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003) (It is "well-established that Eleventh Amendment immunity bars suits brought in federal court when the state itself is sued and when an 'arm of the state is sued.'"); Stevens v. Gay, 864 F.2d 113, 115 (11th Cir. 1989) (citing Alabama v. Pugh, 438 U.S. 781, 782 (1978). "A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense." Coleman v. Ct. App. of Md., 566 U.S. 30, 35(2012). "As an exception to this principle, Congress may abrogate the States' immunity from suit pursuant to its powers under § 5 of the Fourteenth Amendment." Id. Section 1983 is not a "Congressional abrogation of the state's

immunity from damages suits," Gamble v. Fl. Dep't of Health and Rehab Servs., 779 F.2d 1509, 1512 (11th Cir. 1986), and Georgia has not otherwise waived its right to assert an Eleventh Amendment immunity defense against § 1983 claims. See, e.g., Williams v. Bd. Of Regents of Univ. Sys. Of Ga., 477 F.3d 1282, 1301-02 (11th Cir. 2007). Because the GDOC functions as "an arm of the state," it is entitled to Eleventh Amendment immunity. See Miller v. King, 382 F.3d 1248, 1260 (11th Cir. 2004) (holding that Eleventh Amendment immunity protected the GDOC from a § 1983 claim) (overruled on other grounds by Miller v. King, 449 F.3d 1149 (11th Cir. 2006)). Likewise, a state prison is considered an arm of the state and is also therefore entitled to Eleventh Amendment immunity. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Carter v. Ga. Dep't of Corr., No. 5:09-CV-131 (HL), 2010 WL 1931097, at *1 (M.D. Ga. May 12, 2010); see also Allen v. Brown, No. CV 112-052, 2013 WL 1333175, at *3 (S.D. Ga. Mar. 7, 2013) (holding that a jail or prison is not a legal entity subject to liability in a § 1983 claim).

The GDOC and VSP are accordingly dismissed from this action.

## 2. Statute of Limitations

The statute of limitations for § 1983 claims is determined by federal law. Owens v. Okure, 488 U.S. 235, 249-50 (1989). Federal law, however, looks to the law of the state in which the cause of action arose, as the statute itself does not contain a statute of limitations. Id.; Williams v. City of Atlanta, 794 F.2d 624,

626 (11th Cir. 1986). The United States Supreme Court has determined that "in each state the courts must select one appropriate limitations period for all section 1983 claims." Williams, 794 F.2d at 626 (quoting Wilson v. Garcia, 471 U.S. 261, 275 (1985)). In Georgia, the proper limitations period for all § 1983 claims is the two-year period for personal injuries set forth in O.C.G.A. § 9-3-33. Id. The statute of limitations begins to run when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Rozar v. Mullis, 85 F.3d 556, 561-62 (11th Cir. 1996).

Plaintiffs filed this complaint on September 16, 2015, exactly two years after Cainion's death. (Doc. 1, ¶ 6). Thus, absent any basis for tolling, Plaintiffs' claims relating to incidents occurring before September 16, 2013 are barred by the statute of limitations. Accordingly, Plaintiffs' § 1983 claims for deliberate indifference to his seizure disorder and subsequent fall from the top bunk in June 2012;[3] excessive force claim from August 2012 or January 2013;[4] deliberate

---

[3] This event prompted Cainion to file a *pro se* lawsuit on August 13, 2012 in this Court, for "medical indifference, seeking a prison transfer, and to seek recovery for personal injuries sustained as a result of the deliberate indifference demonstrated by such staff members." (Doc. 1, ¶ 14); see Cainion v. Danforth, et al., No. 7:12-cv-108 (M.D. Ga). The case was later dismissed for failure to exhaust administrative remedies.

[4] Plaintiffs allege conflicting dates for the occurrence of what appears to be the same event. Both dates, however, are outside the statute of limitations. Compare Doc. 1, ¶ 24 (alleging the event occurred in August 2012), with Doc. 1, ¶ 32(H) (alleging the event occurred "[o]n or about January 4, 2013).

indifference to his asthma condition from August 2012; conditions of confinement claim from his placement in solitary confinement in September 2012; and failure to protect claim from the September 2012 attack from an unidentified inmate are all dismissed.

Plaintiffs attempt to salvage the bulk of their claims by arguing that the statute of limitations for Cainion's claims arising prior to September 16, 2013 was tolled for multiple reasons: (1) Cainion's incarceration; (2) the continuing violation doctrine; (3) his mental incapacity; and (4) the lack of representation of his estate. (Doc. 17, p. 3-5; Doc. 21, p. 3-5). As with determining the length of the applicable statute of limitations, federal courts generally look to state law for tolling rules. See Wallace v. Kato, 549 U.S. 384, 394 (2007).

In support of their first tolling argument, Plaintiffs rely on the language "or persons imprisoned" that is no longer contained in O.C.G.A. § 9-3-90.[5] Plaintiffs also cite Turner v. Evans, a case decided before the language "or persons imprisoned" was removed from the statute. 251 Ga. 486 (1983). In Turner, the Georgia Supreme Court answered this certified question from the Eleventh Circuit Court of Appeals: "Does Georgia law require a person confined (in jail or prison) at the time a cause of action arises to file suit within the applicable

---

[5] Plaintiffs cite to "Code Ann. § 3-801" and "Ga. Code Ann. § 3-1104" as authority for their position. These statutes were part of an older version of the Georgia Code that was recodified and reclassified in 1981 and enacted in 1982 as part of the Official Code of Georgia. O.C.G.A. § 1-1-1. Thus, the statutes are not current legal authority.

statutory limitation period or does O.C.G.A. § 9-3-90 (Ga. Code 3-801) toll the statute of limitations?" Id. The court determined that the statute, as written at that time, tolled the statute of limitations for prisoners, but left "the authority to repeal [the language of the statute]… solely with the legislature." Id. The legislature subsequently exercised this authority, and in 1984 the wording "or persons imprisoned" was removed from the tolling statute. 251 Ga. at 486; O.C.G.A. 9-3-90(c); see also Lawson v. Glover, 957 F.2d 801, 804 (11th Cir. 1987) ("the imprisonment tolling provisions of former O.C.G.A. 9-3-90 do not result in a tolling of the statute of limitations…"). Plaintiffs' tolling claims based on Cainion's imprisonment are thus invalid.

Plaintiffs' reliance on the continuing violation doctrine as a means for tolling the statute of limitations is also in error. The continuing violation doctrine allows a plaintiff "to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period." Watkins v. Haynes, 2013 U.S. Dist. LEXIS 43881, at *11 (S.D. Ga. March 27, 2013) (quoting Robinson v. United States, 327 F.App'x 816, 818 (11th Cir. 2007). The Eleventh Circuit, however, limits the doctrine "to situations in which a reasonably prudent plaintiff would have been unable to determine that a violation had occurred." Ctr. for Biological Diversity v. Hamilton, 453 F.3d 1331, 1335 (11th Cir. 2006). The continuing violation doctrine is not applicable here because it is apparent that Cainion was aware that his rights had potentially been violated as evidenced by

his formal and informal grievances to prison officials, as well as the *pro se* complaint he filed in this Court on August 13, 2012. (Doc. 1, p. 6-8); see also Kellat v. Douglas County, 2011 U.S. App. LEXIS 26442, at *4-5 (11th Cir. 2011) (determining that the continuing violation doctrine did not apply where the plaintiff had filed multiple grievances over a five month period related to medical care and violations of constitutional rights). The grievances show Cainion's belief that a violation had occurred, thus the continuing violation doctrine is not available to Plaintiffs as a means for tolling the statute of limitations.

Plaintiffs next assert that the statute of limitations should be tolled because of Cainion's mental incapacity. Under Georgia law, the statute of limitations is tolled for periods of time when "[i]ndividuals . . . are legally incompetent because of intellectual disability or mental illness." O.C.G.A. § 9-3-90(a). Tolling applies in "situations where it is not fair to charge a suitor with the running of the clock, because of his mental condition." Martin v. Herrington Mill, LP, 316 Ga.App. 696, 698 (2012) (internal quotation marks and citation omitted). "[T]he test to be applied is whether the one claiming the disability has such unsoundness of mind . . . as to incapacitate one from managing the ordinary business of life." Id. (internal quotation marks and citation omitted); see also Lewis v. Broward Cty. Sch. Bd., 489 F.App'x 297, 298 (11th Cir. 2012) ("[M]ental incapacity is not a *per se* reason to toll a statute of limitations and the mental impairment must have

12

affected the petitioner's ability to file a timely petition.") (citing <u>Hunter v. Ferrell</u>, 587 F.3d 1304, 1308 (11th Cir. 2009)).

Generally, a plaintiff who seeks tolling bears the burden of proving incapacity under Georgia law, and a court may determine incapacity as a matter of law. <u>See</u> <u>Carter v. Glenn</u>, 243 Ga. App. 544 (2000). However, the standard for alleging mental incapacity for the purpose of invoking the tolling provision to withstand a motion to dismiss is not so onerous. <u>LaGrasta v. First Union Securities, Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004). "[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." <u>Id.</u> (internal quotation marks omitted). The Georgia Court of Appeals has held that an allegation that following a car accident the plaintiff "was totally and physically incapacitated with the result that she was incompetent to manage her affairs" was sufficient to withstand a motion to dismiss. <u>Lowe v. Pue</u>, 150 Ga.App. 234, 237 (1979). The Eleventh Circuit in applying <u>Lowe</u> has likewise held that an allegation that "as a result of an injury caused by defendants, [the plaintiff] was physically and mentally incapacitated and was incompetent to manage his own affairs" was sufficient to invoke the tolling provisions of § 9-3-90. <u>Lawson v. Glover</u>, 957 F.2d 801, 805-06 (11th Cir. 1987).

Plaintiffs' Complaint contains no factual assertions regarding Cainion's mental capacity, and there are no facts presented from which the inference may

be drawn that Cainion was unable to manage the ordinary affairs of his life. Additionally, Plaintiffs' unsupported assertion in response to Defendants' motion to dismiss that Cainion was intellectually disabled is insufficient to invoke the tolling provision on which Plaintiffs wish to rely. Plaintiffs state only that Cainion was developmentally delayed but do not allege how or if that delay impacted his ability to manage his affairs. Such a proposition is otherwise belied by evidence that Cainion filed multiple grievances and at least one lawsuit while incarcerated at VSP. Thus, in the absence of any factual assertions that Cainion's mental or intellectual capacity in some way impeded his ability to manage his own affairs, the Court concludes that there is no foundation to toll the statute of limitations on this basis.

Plaintiffs' final attempt to save their time-barred claims by arguing that the Cainion's estate remained unrepresented until September 2015 when Ms. Hanford was appointed Administrator is likewise unavailing. In order to toll the statute of limitations due to the lack of representation of an estate, O.C.G.A. § 9-3-92 provides, in relevant part, that "the time between the death of a person and the commencement of representation upon his estate….shall not be counted against his estate in calculating any limitation applicable to the brining of an action, provided that such time shall not exceed five years." O.C.G.A. § 9-3-92. Neither Plaintiffs' Complaint nor response briefs provide sufficient information on which the Court can conclude that this tolling statute applies.

### 3. Failure to Protect

Plaintiffs allege that Defendants Owens, Jacobs, Danforth, Allen, Orr, and McDougle were deliberately indifferent to a serious risk of substantial harm to Cainion. Under the Eighth Amendment, prison officials have a duty to "take reasonable measures to guarantee the safety of the inmates." Caldwell v. Warden, Fl Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). Mainly, they "have a duty to protect prisoners from violence at the hands of other prisoners." Id. (quoting Farmer, 511 U.S. at 833) (internal quotation marks omitted). Not every injury that one inmate suffers at the hands of another inmate gives rise to constitutional liability, but a prison official violates the Eighth Amendment "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." Id. (quoting Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir.2003)) (internal quotation marks omitted).

Thus, to plead a failure to protect claim under the Eighth Amendment, a plaintiff must allege facts that show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Goodman v. Kimbrough, 718 F.3d 1325, 1331 (11th Cir. 2013) (internal quotation marks omitted).

### a. Substantial Risk of Serious Harm

The first element of an Eighth Amendment claim—substantial risk of serious harm—is viewed objectively. Caldwell, 748 F.3d at 1099. To establish a substantial risk of serious harm, failure to protect plaintiffs are "not required to show . . . precisely who would attack whom . . . but only that [the defendants] had subjective knowledge of a generalized, substantial risk of serious harm from inmate violence." Hale v. Tallapoosa County, 50 F.3d 1579, 1583 (11th Cir. 1995) (internal quotations omitted). The Eleventh Circuit has stated that "an excessive risk of inmate-on-inmate violence at jail creates a substantial risk of serious harm; occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, but confinement in a prison where violence and terror reign is actionable." Harrison v. Culliver, 746 F.3d 1288, 1299 (11th Cir. 2014).

The Eleventh Circuit's recent decision in Lane v. Philbin is instructive in determining when this objective element is met. 835 F.3d 1302 (11th Cir. 2016). In Lane, the plaintiff filed a *pro se* complaint under § 1983 for deliberate indifference for failure to protect based on allegations that he was attacked by a fellow inmate who threatened him on his way to the dining hall at VSP.[6] Id. at 1305. The Eleventh Circuit reversed the district court's dismissal and determined that, contrary to the district court's finding, the plaintiff had sufficiently alleged a

_____

[6] The plaintiff in Lane filed a *pro se* complaint, which is subject to a less stringent pleading standard than complaints filed by parties represented by counsel. Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011).

substantial risk of serious harm by specifically describing the environment he experienced. Id.

Specifically, the Eleventh Circuit found the plaintiff's allegations that his dormitory, E-Building, consisted mostly of gang members, that "inmates who were not gang-affiliated (or who were non-Muslim) were robbed and stabbed," and that "only one officer supervis[ed] two separate [50-]man dorms" of E-Building, were all facts supporting the plaintiff's claim that a substantial risk of serious harm existed where he was imprisoned. Id. at 1307-08. The plaintiff also described in his complaint how inmates would make weapons from materials found in the dormitory, and that those weapons were not confiscated by prison officials. Id. at 1308. Further, the plaintiff stated that his attacker, who hit him in the eye with a lock and stabbed him four times in the back, had threatened him prior to the attack. Id. The Eleventh Circuit found that these facts—namely, the majority gang presence, lack of adequate supervision, and culture of gang violence and stabbings in E-Building—were sufficient to support the claim that a substantial risk of serious harm existed and subsequently resulted in serious harm to the plaintiff.

Specific facts such as those in Lane are absent from the present claim. Here, Plaintiffs present only conclusory allegations that there was a general risk of serious harm present at VSP. For example, Plaintiffs state that Cainion's murder was one of many in a five year period that that "Defendants were aware

17

of the dangerous conditions including the gang violence, Inmate on Inmate crimes, Staff on Inmate crimes, that occurred at the prison." (Doc. 1, ¶ 30). But Plaintiffs contend Defendants were aware of this risk of serious harm as a result of ante litem notices and pending lawsuits. However, Plaintiffs fail to allege who presented notices or filed these purported lawsuits, when these documents were made available to Defendants, or what particular dangerous conditions were addressed such that Defendants should have been on notice that the conditions at VSP were so extreme and posed an unreasonable risk of serious injury to Cainion's future health or safety. See Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004). In their response brief, Plaintiffs assert additional facts[7] relating to VSP's purported custom of failing to screen visitors to the prison and prison staff. (Doc. 17, p. 9). Again, Plaintiffs fail to draw any connection to the lax screening procedures and Cainion's death. For example, Plaintiffs present no allegations that Cainion's attacker obtained the weapon he used to stab Cainion from a visitor or a staff member. Similarly, Plaintiffs do not link their claim that

_____

[7] Defendants object to Plaintiffs setting forth additional facts in their response brief, citing to Burgess v. Religious Tech. Ctr., Inc., 600 F.App'x 657, 665 (11th Cir. 2015), for the proposition that a plaintiff cannot amend her complaint through a response to a motion to dismiss). However, the distinction between Burgess and this case is that in Burgess, the plaintiffs were attempting to impermissibly add new claims rather than presenting additional factual material as is the case here. See Thomas v. Humprey, 5:13-CV-108 MTT, 2014 WL 1056699, at *1 n.3 (M.D.Ga. Mar. 19, 2014) (concluding that because the plaintiff was raising a new claim but rather asserting more factual allegations in support of a claim already raised in the complaint, there was no issue of notice to the defendants).

VSP staff did not adequately ensure that all cell doors were locked to the attack on Cainion.

In Lane, the plaintiff, albeit filing *pro se*, satisfied the objective first element of a deliberate indifference claim by specifically describing the environments where he was housed, where the attack occurred, and a means for the violence to occur. Here, though represented by counsel, Plaintiffs have not alleged facts sufficient to meet even the less stringent standard of a *pro se* complaint. For example, Plaintiffs have made no specific allegations as to whether Cainion faced a serious risk of substantial harm from the inmate who attacked him by way of verbal or physical threats, or if Cainion had been threatened by other inmates prior to the attack. Further, Plaintiffs do not state or explain where the fatal attack occurred within VSP, and subsequently have made no specific allegations regarding the environment or danger of the area where the attack occurred. The Plaintiffs also fail to describe instances of violence to permit an inference that "an excessive risk of inmate-on-inmate violence" exists at VSP. Harrison, 746 F.3d at 1299. Instead, Plaintiffs have generally alleged that VSP as a whole is a dangerous environment, which they claim is evidenced by other general assertions of prior violence and ante litem notices.

In a factually similar case, the Eleventh Circuit found a plaintiff's allegations insufficient to create a serious risk of substantial harm despite more serious allegations than are present here. In Patton v. Rowell, the Eleventh

Circuit affirmed the district court's dismissal of the plaintiff's failure to protect claims when the plaintiff stated the defendants knowingly did not latch a fellow inmate's cell door or check the door's locking mechanism, and this failure resulted in the plaintiff being attacked by the fellow inmate. 2017 U.S. App. LEXIS 1832, *5 (11th Cir. 2017). The Eleventh Circuit found that these facts may constitute negligence on the part of the defendants, but were not sufficient to "violate the Eighth Amendment." Id.

In Bowen v. Warden, Baldwin State Prison, the Eleventh Circuit reversed the district court's dismissal of the plaintiff's failure to protect claims, but on more egregious facts than those in Patton. 826 F.3d 1312 (11th Cir. 2016). Similar to the present case, the administrator of the plaintiff's estate in Bowen brought suit under § 1983 after the plaintiff was beaten to death by his cellmate. Id. at 1318. The Eleventh Circuit found the plaintiff's claims that defendants knew "specifically that [the cellmate] had committed a 'High-Assault' against his previous cellmate and that the assault had precipitated his transfer and segregation," and that defendants were aware of the dangerous propensities and history of mental instability of the cellmate, were sufficient to allege a substantial risk of serious harm. Id. at 1322-24. The defendants would have known that, based on those facts, the attacking cellmate should have been housed alone. Id. No such factual allegations are present in this case.

Thus, even when taking the Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, Plaintiffs' deliberate indifference claim must fail as no facts have been alleged to state a plausible claim that either a serious risk of harm existed.

b.    Deliberate Indifference to a Substantial Risk of Serious Harm

Even if Plaintiffs had effectively pled that Cainion was exposed to a substantial risk of serious harm, Plaintiffs still have not adequately alleged that Defendants were aware of that risk and deliberately ignored it. The second element of an Eighth Amendment claim—the defendants deliberate indifference to a substantial risk of serious harm—has both a subjective and objective component: the plaintiff must show that the defendants subjectively knew the inmate faced a substantial risk of serious harm and that the defendants disregarded the risk by not responding in an objectively reasonable manner. Id.; Rodriguez v. Sec'y for Dep't of Corr., 838 F.3d 611, 617 (11th Cir. 2007).

For the subjective component of the deliberate indifference element, the defendant must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; Caldwell, 748 F.3d at 1099-1100. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."

21

<u>Farmer</u>, 511 U.S. at 842. However, "before [a defendant's] awareness arises to a sufficient level of culpability, there must be much more than mere awareness of [an inmate's] generally problematic nature." <u>Carter</u>, 352 F.3d at 1349. The plaintiff must allege facts that would allow a jury to conclude that the defendant actually knew the plaintiff faced a substantial risk of serious harm to the plaintiff, and the plaintiff must provide evidence that the defendant failed to respond to the substantial risk in an objectively reasonable manner. <u>Caldwell</u>, 748 F.3d at 1102.

Here, Plaintiffs allege that Defendants Owens, Jacobs, Danforth, Allen, Orr, and McDougle were deliberately indifferent to dangerous prison conditions at VSP. Specifically, Plaintiffs allege that Defendants were subjectively aware of the dangerous prison conditions at VSP, and in ignoring those dangerous conditions, failed to protect Cainion from a substantial risk of serious harm. However, Plaintiffs' allegations, taken as true, are not sufficient to establish that either a substantial risk of serious harm existed or that the defendants were deliberately indifferent.

**Commissioner Owens.** Plaintiffs claim that Defendant Owens "was deliberately indifferent to dangerous prison conditions at VSP, as he was subjectively notified of such conditions by several ante litem notices and [l]aw [s]uits still pending," and that he was further put on notice "by previous and continued homicides committed in Valdosta State Prison over the past (5) five years." (Doc. 1, ¶ 32(A)). Plaintiffs do not allege any specific detail pertaining to

the ante litem notices or lawsuits, such as what incidents specifically prompted them, the dates on which Commissioner Owens would have been made aware of the notices or lawsuits, or how many ante litem notices and law suits have been filed. Plaintiffs also neglect to specify what "previous and continued homicides…over the past (5) five years" they are referring to, or if deliberate indifference by prison officials was found to be a cause. Thus, these allegations are merely conclusory and are not sufficient to support the Plaintiffs' claim that Commissioner Owens was either subjectively or objectively aware of a pervasively violent environment at VSP.

**Director Jacobs.** Plaintiffs state that Defendant Jacobs was "deliberately indifferent to dangerous prison conditions at VSP," and "negligently and wantonly fail[ed] to exercise powers within his purview to ensure that proper counter-measures and/or measures were set in place to curtail the injury and prevent the demise of DeMarquis." (Doc. 1, ¶ 32(A), (B)). These allegations, like those made against Commissioner Owens, are merely conclusory, and are not sufficient to support the Plaintiffs' claim that Defendant Jacobs was deliberately indifferent to a substantial risk of harm to Cainion. A defendant in a § 1983 suit must be more than merely negligent to reach the necessary threshold of deliberate indifference. Daniels v. Williams, 474 U.S. 327, 330 (1986) ("in any given § 1983 suit, the plaintiff must still prove a violation of the underlying constitutional right; and

depending on the right, merely negligent conduct may not be enough to state a claim.").

**Wardens Danforth and Allen.** Plaintiffs allege that Defendants Danforth and Allen "dismiss[ed] informal and formal grievances and…fail[ed] to take evasive or proactive actions to protect DeMarquis even though they subjectively knew or should have known his life was in grave danger." (Doc. 1, ¶ 32(C)). However, Plaintiffs fail to include the basis for those grievances or even when the grievances were filed. Plaintiffs also allege Defendants Danforth and Allen had knowledge of a risk of harm based on "repeated stabbings of inmates in Valdosta State Prison, and by the fact that DeMarquis was previously stabbed before the incident that led to his demise, and/or by the previous ante litem notices served to them, and by the aforementioned lawsuit filed *pro se* by DeMarquis naming them as defendants." Id. Again, Plaintiffs' allegations, similar to those made against Defendants Owens and Jacobs, are conclusory and lacking in requisite specificity required to allege deliberate indifference.

**Deputy Warden Orr.** Plaintiffs allege that Defendant Orr was "deliberately indifferent by not taking measures necessary to prevent De[Marquis] from being targeted by staff members and/or inmates as a result of the negative attention he was getting," and that he "was subjectively notified of the same ante litem notices addressed to him and by the multiple lawsuits filed against VSP, and by being informed f[rom] DeMarquis himself." (Doc. 1, ¶ 32(E)). As stated above, the

24

allegations that pertain to this claim are insufficient to establish deliberate indifference to a substantial risk of serious harm.

**Lieutenant McDougle.** Plaintiffs allege that Defendant McDougle "demonstrate[ed] deliberate indifference by negligently ignoring DeMarquis' cries for help, his grievances, his medical conditions, and his overall safety." (Doc. 1, ¶ 32(H)). These allegations are insufficient to support the Plaintiffs' claim that Defendant McDougle drew the inference of a substantial risk of serious harm and deliberately ignored it. It is not required that prison officials prevent inmates from receiving negative attention, nor does negligence constitute deliberate indifference. See Carter, 352 F.3d 1346, 1350 (11th Cir. 2003) ("merely negligent failure to protect an inmate from attack does not justify liability under section 1983") (quoting Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990)).

At no point do Plaintiffs allege that Cainion requested protection from other inmates or that Defendants knew about any request for protection. Plaintiffs cannot meet the requirements of the subjective knowledge requirement through summary statements of generalized conditions at the prison. Nor do lawsuits filed by other inmates or notices provided to prison authorities impute subjective knowledge of any danger faced by Cainion.

### 4. Deliberate Indifference to Serious Medical Need

Plaintiffs claim that Defendants Owens, Jacobs, Danforth, Allen, Orr, and McDougle were deliberately indifferent to Cainion's serious medical needs

25

following the September 2013 attack. The claims are, however, insufficient to support the Plaintiffs' allegations of deliberate indifference.

To prevail on a deliberate indifference to serious medical need claim, a plaintiff must show: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between the indifference and the plaintiff's injury. Mann v. Taser Intern., Inc., 588 F.3d 1291, 1306-07; Goebert v. Lee County, 510 F.3d 1312 (11th Cir. 2007). The Eleventh Circuit has defined a medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Mann, 588 F.3d at 1307 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). A medical need may also be determined by whether a delay in treating the need worsens the condition. Hill, 40 F.3d at 1188-89; see Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994). A medical need is defined as serious when it is one that, "if left unattended, poses a substantial risk of serious harm." Mann, 588 F.3d 1291, 1307 (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)). To show that the prison official acted with deliberate indifference to the prisoner's serious medical need, the plaintiff "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) conduct that is more than mere negligence. Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004)).

Here, Plaintiffs have not sufficiently alleged that any of the named defendants were deliberately indifferent to Cainion's medical needs. Plaintiffs generally allege that each defendant breached a duty to keep prison conditions safe, which then contributed to the death of Cainion. Plaintiffs state that Defendant Owens was "negligent in failing to take immediate and effective measures to alter and/or enhance the policies that were currently in place to protect inmates," and because of his failure to do so, Cainion "sustain[ed] personal injuries and was not properly medically treated which ended his life on the same day." (Doc. 1, ¶ 32(A)). Plaintiffs also allege that Defendant Jacobs "was further deliberately indifferent due to negligently and wantonly failing to exercise powers within his purview to ensure that proper counter-measures and/or measures were in place to curtail the injury and prevent the demise of DeMarquis." (Doc. 1, ¶ 32(B)). Defendants Danforth and Allen were generally "deliberately indifferent to dangerous prison conditions at VSP," and their failure to take proper measures proximately resulted in Cainion's personal injuries and improper medical treatment on the date of his death. (Doc. 1, ¶ 32(C)). Defendant Orr "had a duty to protect DeMarquis under color of law," and violated that duty and Cainion's Eighth Amendment rights "by failing to properly and timely obtain medical service for DeMarquis on September 16, 3013." (Doc. 1, ¶ 32(E)). Again, these generalized allegations do not rise to the level of specificity required to plausibly establish even the objective elements of the claim.

27

Even assuming, arguendo, that a serious medical need existed from either the stabbing itself or a delay in treating Cainion after the stabbing occurred, Plaintiffs would have to allege facts sufficient to establish that Defendants showed "such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." See Mann, 588 F.3d at 1307 (quoting Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004)). Plaintiffs have neither alleged nor stated facts that can be construed to meet this standard. Instead, Plaintiffs assert general and conclusory allegations that Defendants were negligent in their duties, that the Defendants' negligence, in turn, was deliberate indifference to Cainion's medical needs, and was thus a proximate cause of Cainion's death. However, negligence does not constitute deliberate indifference, nor does it provide a basis for allegations of deliberate indifference to a serious medical need or a delay in response to a medical need.

Thus, taking the Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, Plaintiffs' claims against Defendants for deliberate indifference to a serious medical need are insufficient to state a plausible claim.

## C. State Law Claims

The only remaining claims in this action involve state law causes of action, over which the Court may, but is not required to, exercise supplemental jurisdiction. 28 U.S.C. § 1367(a) (conferring federal district courts with supplemental jurisdiction over "claims that are so related to claims in the action

within [the court's] original jurisdiction that they form part of the same case or controversy). Once a plaintiff's federal claims are dismissed, "there remains no independent original federal jurisdiction to support the Court's exercise of supplemental jurisdiction over the state claims against Defendant." Baggett v. First Nat. Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997). Pursuant to § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. "The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088–89 (11th Cir. 2004). When making the determination whether to exercise supplemental jurisdiction, the district court should consider the factors set forth by the Supreme Court in United Mine Workers v. Gibbs: judicial economy, conveniences, fairness to the parties, and whether all the claims would be expected to be tried together. Palmer v. Hosp. Auth., 22 F.3d 1559, 1569 (11th Cir. 1994) (citing United Mine Workers of America v. Gibbs, 383 U.S. 715, 725-26 (1966)). The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." Raney, 370 F.3d at 1089.

Because the Court has dismissed Plaintiffs' § 1983 claims, the only claims over which the court has original jurisdiction, the remaining state law claims now "substantially predominate." See 28 U.S.C. § 1367(c)(2)-(3). Taking into account

the relevant <u>Gibbs</u> factors and finding that judicial economy favors declining to exercise supplemental jurisdiction over Plaintiffs' state law claims, the Court declines to exercise jurisdiction over Plaintiffs' remaining state law claims.

## D. Remaining Defendants

The Court further dismisses Plaintiffs' claims against Defendants Jeffery Stephen Dell, the inmate responsible for Cainion's death, and the John Doe inmate, who allegedly stabbed Cainion in September 2012.[8] Other prisoners are not proper defendants in a § 1983 action. <u>See</u> 42 U.S.C. § 1983; <u>Simonton v. Tennis</u>, 437 F. App'x 60, 62 (3d Cir. 2011). Accordingly, these two Defendants are dismissed.

As to the remaining Defendants, Warden Cedric Taylor, Director Thomas E. Sittnick, Deputy Warden Ted Philbin, Sergeant Miles, and Sergeant Melton, Plaintiffs are ordered to show cause by May 29, 2017, why this case should not be dismissed for failure to effect service on these defendants pursuant to Federal Rule of Civil Procedure 4(m). The docket reflects that Plaintiffs initiated this action on September 16, 2015. This case has been stayed since October 29, 2015 pending the resolution of the motions to dismiss filed by Defendants GDOC, VSP, Owens, Jacobs, Danforth, Allen, Orr and McDougle. During this

---

[8] Even if Plaintiffs could assert a claim against the John Doe inmate – a claim which is otherwise impermissible in federal court, <u>see</u> <u>Richardson v. Johnson</u>, 598 F.3d 734, 738 (11th Cir. 2010) – Plaintiffs' claims arising from the September 2012 attack are barred by the two year statute of limitations as previously discussed.

lengthy period of time, there is no evidence in the record that Plaintiffs have made any attempt to serve the other defendants named as parties to this lawsuit.

Plaintiffs are hereby advised that failure to comply with the Court's Order will result in the immediate dismissal of Plaintiffs' Complaint against these individuals.

## III.    CONCLUSION

For the foregoing reasons, the Defendants' motions to dismiss (Docs. 8, 11, 15, 16) are **GRANTED**. Additionally, Defendants Jeffrey Stephen Dell and John Doe are dismissed as improper parties. Plaintiffs are ordered to show cause by May 29, 2017, why the remaining defendants should not be dismissed for failure to effect proper service.

**SO ORDERED** this 28th day of April, 2017.

*s/ Hugh Lawson*_____
**HUGH LAWSON, SENIOR JUDGE**

ehm